Bochner PLLC
Jeremy M. Doberman, Esq. (N.J. Bar No. 089572013)
1040 Avenue of the Americas, 15th Floor
New York, New York 10018
(646) 971-0685 [telephone]
Jeremy@Bochner.law

Afiyfa H. Ellington, Esq. (N.J. Bar No. 030112003)
695 Cross Street, Suite 281
Lakewood, N.J. 08701
(973) 699-8672 [telephone]
aellington@mfamilyindustries.com

*Attorneys for Plaintiffs*
*Blueberry Funding, LLC and Alan Miller*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BLUEBERRY FUNDING, LLC and ALAN MILLER, individually,** | |
| *Plaintiffs* | **Case No. 1:24-cv-06617-ESK-SAK** |
| | **CIVIL ACTION** |
| **vs.** | |
| **ISAAC M. NEUBERGER, STEVEN J. WILNER, and NEUBERGER QUINN GIELEN RUBIN GIBBER P.A.,** | |
| *Defendants* | **FIRST AMENDED VERIFIED COMPLAINT** |

Plaintiffs, Blueberry Funding, LLC ("Blueberry") and Alan Miller, individually ("Miller", collectively "Plaintiffs"), by way of the instant Amended Verified Complaint against Defendants, Isaac M. Neuberger ("Neuberger"), Steven J. Willner ("Willner"), and the firm of Neuberger Quinn Gielen Rubin Gibber, P.A. (the "Firm", collectively referred to as "Defendants"), alleges as follows:

## NATURE OF THE CASE

1.    This  is  an  action  predicated  upon  Defendants'
intentional and wrongful interference with Blueberry's prosecution
of  its  fraud  lawsuit  against  non-party  Leor  Moshe  in  another
lawsuit presently pending before this Court (the "Fraud Case").

2.    Through  threats  and  intimidation,  Defendants  have
attempted  to  coerce  Plaintiff  Blueberry,  by  and  through  its
principal Plaintiff Alan Miller, into dropping the Fraud Cause and
instead  entering  into  strict  confidentiality  agreements  and
joining an alleged arbitration proceeding regarding Mr. Moshe's
assets in a proceeding to be filed with a local Orthodox Jewish
rabbinical court known as Bais Din Maysharim (the "Bais Din").

3.    Plaintiffs file this action for the Defendants' tortious
interference,  conspiracy,  violation  of  New  Jersey's  Bias  Crime
statute N.J.S.A. 2A:53A-21, violation of New Jersey's Racketeer
and Corrupt Organizations Act ("RICO"), and unauthorized practice
of  law  in  New  Jersey,  all  of  which  have  harmed  Plaintiffs.  By
interfering  in  the  Fraud  Case  and  conspiring  with  Mr.  Moshe  and
his  counsel  in  an  attempt  to  deprive  Blueberry  of  its  due  process
rights  to  pursue  its  claims  in  a  court  of  law,  Defendants'  actions
have  prevented  Blueberry  from  settling  its  matter  with  Mr.  Moshe,
which  in  turn  has  deprived  Blueberry  from  recovering  funds  from
Moshe and needlessly and vexatiously raised the costs of litigation
for  Blueberry,  thereby  causing  Plaintiffs  damages  which  are  being

sought herein. Almost unbelievably, the Firm unilaterally interfered with the ongoing litigation, despite not having been retained by any party, and then invoiced **the parties** in the Fraud Case for alleged services rendered in the amount of $250,000 and sought a proportional payment from Blueberry. These are the actions of gangsters and intimidators, not lawyers at their craft.

## THE PARTIES

4.    Plaintiff Blueberry Funding, LLC is a foreign limited liability company organized under the laws of the State of Delaware that is authorized to conduct business in the State of New Jersey. Blueberry maintains its principal place of business at 400 Blvd of the Americas, Suite 303-1, Lakewood, New Jersey 08701.

5.    Plaintiff, Alan Miller is an individual residing in the State of New Jersey and a principal of Plaintiff Blueberry.

6.    Defendant Isaac M. Neuberger is an attorney-at-law licensed to practice in the State of Maryland. Defendant Neuberger maintains his practice and actively practices law through the Firm. At all times material hereto, Neuberger has availed himself of the right to conduct business in and has actually conducted business in the State of New Jersey, despite not being licensed to practice law in the State of New Jersey. Defendant Neuberger is being sued herein in both his individual capacity as well as in his capacity as managing partner of the Firm. Defendant Neuberger may be served

with process at 1 South Street, 27th Floor, Baltimore, Maryland 21202, or wherever he may be found.

7.    Defendant Steven J. Willner is an attorney-at-law licensed to practice in the State of Maryland. Defendant Willner maintains his practice and actively practices law through the Firm. At all times material hereto, Willner has availed himself of the right to conduct business in and has actually conducted business in the State of New Jersey, despite not being licensed to practice law in the State of New Jersey.[1] Defendant Willner is being sued herein in both his individual capacity as well as in his capacity as principal of the Firm. Defendant Willner may be served with process at 1 South Street, 27th Floor, Baltimore, Maryland 21202, or wherever he may be found.

8.    Defendant law firm Neuberger Quinn Gielen Rubin Gibber, P.A. is a regional law firm that has availed itself of the right, and has conducted business throughout the east coast of the United States, including the State of New Jersey. On information and belief, Neuberger is the managing partner of the Firm. As such, the Firm may be served with process herein by and through its authorized agent, Neuberger, at 1 South Street, 27th Floor, Baltimore, Maryland 21202, or wherever the Firm may be found.

---

[1] Subsequent to the events described herein, Willner was admitted to practice law in the State of New Jersey on July 19, 2024. Willner, however, in practicing law in New Jersey relevant to the matters provided for herein, did not disclose that he was not admitted to practice law in the State of New Jersey or that he may have had an application pending for admission to practice law in New Jersey.

## JURISDICTION and VENUE

9.    Jurisdiction is proper in this matter, given that Defendants conducted business in the State of New Jersey. Moreover, this Court may exercise *in personam* jurisdiction over a non-resident defendant consistent with due process of law.  This Court has personal jurisdiction over the Defendants by virtue of R. 4:4-4.

10.    Subject matter jurisdiction over this action is proper herein pursuant to 28 U.S.C. 1332 because this case is between citizens of different states and concerns an amount in controversy above $75,000.

11.    Venue is proper in this Court because a substantial part of the events, transactions and/or occurrences giving rise to Plaintiffs' claims set forth herein occurred within this judicial district.

## BACKGROUND FACTS

12.    On or about March 16, 2023, 120 Whitesville LLC in conjunction with Leor Moshe executed an Investment Agreement, Promissory Note, and other related documents (collectively, the "Investment") finalizing an Investment and loan of Two Million ($2,000,000.00) Dollars, which Leor Moshe personally guaranteed.

13.    For the Investment, and based upon the false and fraudulent representations and information provided by Leor Moshe, as described hereunder, at the direction of Leor Moshe, Blueberry

caused the sum of Two Million ($2,000,000.00) Dollars to be wired to Capital Funding ASAP LLC to the account ending at 7004.

14. Blueberry has asserted that Mr. Moshe's "business activities" involved a "Ponzi scheme," whereby he would procure funds from "Peter" to pay some amount to "Paul," who may have been a prior investor/lender, while absconding with the remainder. Blueberry has asserted that those financial shenanigans on the part of Mr. Moshe were the cause of his failure to pay back the funds provided to him by Blueberry.

15. Blueberry has since learned that several other third parties were likewise injured by Mr. Moshe in various manners of financial gamesmanship, leading to multiple claims which have been asserted, or which remain to be asserted against him and his related companies. While Mr. Moshe has threatened bankruptcy to hinder and delay those parties, it appears that the claims arrayed against him may not be dischargeable due to the fraudulent, criminal, and/or intentionally malfeasant conduct associated with Mr. Moshe's actions.

16. As a result of Mr. Moshe's actions, on June 6, 2023, Blueberry brought a breach of contract suit upon the Investment and fraud case against him and 120 Whitesville LLC in the following lawsuit filed in the State of New Jersey:

> *Blueberry Funding, LLC v. Leor Moshe, 120 Whitesville*
> *LLC, John Does 1-10 (Fictitiously named), and XYZ*
> *Corporations 1-10 (Fictitiously named); Civil Action*

Docket No. OCN-L-001301-23; in the Superior Court of New Jersey, Ocean County, Law Division, which was later removed to the United States District Court, District of New Jersey, entitled *Blueberry Funding, LLC v. Moshe, et al.,* Case No. 1:24-cv-0687-ESK-SAK, and recently remanded to Superior Court of New Jersey (the "Fraud Case").

After the filing of the Fraud Case, on June 6, 2023, a *lis pendens* was recorded by Blueberry against Mr. Moshe's real property located at 437 Brentwood Avenue, Toms River, New Jersey 08755 (Block 13.01; Lot 21).

17. Mr. Moshe made his initial appearance in the Fraud Case via the filing of his original answer made on August 28, 2023. Mr. Moshe asserted several denials and raised five (5) affirmative defenses to the complaint lodged by Blueberry, thereby placing himself firmly within the jurisdiction (both personal and subject matter) of the trial court based in Ocean County, New Jersey.

18. On information and belief, Defendants Neuberger, Willner and the Firm have never participated in, nor represented any of the parties joined to, the Fraud Case. Moreover, on further information and belief, Defendants Neuberger, Willner and the Firm are not essential witnesses to the events underlying the factual issues raised in the Fraud Case, and indeed they have no independent knowledge of the Fraud Case prior to their improper interference described herein. In short, Defendants Neuberger, Willner and the Firm do not appear to possess any discernable interest whatsoever in the parties or outcome of the Fraud Case.

19.   Despite the lack of interest in the parties and outcome of the Fraud Case, Defendants Neuberger, Willner and the Firm nonetheless voluntarily chose to engage in a pattern of conduct designed to coerce and intimidate Blueberry into dropping the Fraud Case and instead join the Bais Din, a rabbinical arbitration proceeding.

20.   Mr. Moshe is an adherent of the Orthodox Jewish faith who resides in a community of like-minded individuals in or around Ocean County, New Jersey. On information and belief, he does not want his fraudulent acts and Ponzi Scheme activities to be advertised within the community in which he resides. As such, it appears that he reached out through his counsel, Steven Yurowitz, Esq., to local religious leaders of Lakewood, New Jersey (the "Askonim"), for the purpose of retaining additional counsel to initiate and preside over a rabbinical court proceeding, so that Mr. Moshe could minimize the likelihood of potential criminal charges and keep his illicit activities relatively quiet from the public at large.

21.   After meeting with Attorney Yurowitz, the Askonim apparently turned to Defendant Neuberger, a member of Baltimore's Orthodox Jewish community.  In fact, Neuberger has stated that he did not represent any individual victim who may have been harmed through Moshe's Ponzi Scheme and fraudulent acts. Rather, Neuberger has stated, he was approached by two Askonim, Rabbi

Chidaw Weiss of Antwerp and the Dayan of Maaleh Adumim and then the Satmar Rabbi of Boro Park, who requested that he assist with getting Moshe's victims together. <u>See</u> Exhibit 1.

22. Defendants' actions against the Plaintiffs were first initiated on June 29, 2023, when Defendant Neuberger, through the Firm, reached out through third parties in an attempt to meet with Blueberry's representatives regarding its claims against Leor Moshe. <u>See</u> Exhibit 2.

23. On or about June 29, 2023, a virtual conference call was held.

24. Defendant Neuberger communicated with Blueberry's representative Alan Miller on July 7, 2023. Neuberger, providing unsolicited legal advice, proposed to Blueberry a plan to have the parties who possessed claims against Leor Moshe joined in arbitration in front of the Bais Din. As noted hereinabove, on information and belief, the purpose of the Bais Din (and Neuberger's purpose) was to prevent Blueberry from publicly airing its fraud and breach of contract claims so that the community at large from having the shame of Leor Moshe's actions become public. <u>See</u> Exhibit 3.

25. Specifically, Defendant Neuberger emailed a list of investors (who were bcc'd on the email in order to maintain confidentiality, according to Neuberger) to advise of the status of a "Shtar Berurin," an arbitration agreement to participate in

the Bais Din ("Agreement").  In particular the following was stated

in the email:

- **Fees and expenses Leor has agreed to find and advance the costs of the Bais Din and its accountants and lawyers up front.  Of course, the Bais Din will ultimately determine this issue.  I have agreed to award a final determination of Bais Din to be paid for the costs of organizing this matter.**
- **As I have written before, we will NOT represent anyone in this matter BUT it is important each Baal Din-investor, commission agent guarantor be properly represented. I think there may be no more than 3 as independent counsel.  I think that it would be wise for the Investor group as a whole to appoint a single counsel that could present the individual facts to the Bais Din and while the Shtar has a place for each investor to list his or her history-payments and receipts, there is really NO conflict as between investors and if anyone has a suggestion for this role, please be in touch.  The same situation is true about commission agents who are NOT guarantors.  They too could have the same counsel.  I am happy to present to the investors as whole a list of the affected peoples-but need each of your permission to do so.  A simple e-mail to me saying OK would suffice. If anyone wants confidentiality, they should say so and I will advise the Bais Din, so that they can deal privately with such people.**

At that point, there were only two investors who indicated they

would not join, a commission agent and an investor who feels he

has a better position than other investors. Neuberger stated that

he and Wilner, have fielded many calls. In so doing, Neuberger,

Willner and the Firm rendered one or more unsolicited legal

opinions as to New Jersey law upon which Neuberger intended others

to rely. In addition, Neuberger, Willner and the Firm, provided

unsolicited legal advice, recommending that various parties who have competing claims and conflicting interests hire the same attorneys to seek portions of a defined pool of funds from Leor Moshe's Ponzi scheme. See Exhibit 3.

26. Defendants' emails to Blueberry and other allegedly harmed companies and individuals were continual, involving hundreds of emails back and forth, including direct emails to Blueberry and its representative Alan Miller. See Exhibit 3.

27. In an email dated July 10, 2023, Blueberry, through counsel, indicated that his client did not wish to participate in the Bais Din proceeding. Nonetheless, emails by Defendants to Blueberry were non-relenting. See Exhibit 4.

28. After Defendant Neuberger's initial communications with Blueberry, Neuberger and Mr. Yurowitz (counsel for Mr. Moshe), on July 11, 2023, conducted a Zoom meeting with several third-parties who possessed claims against Leor Moshe, in an attempt to convince those parties to join arbitration in Bais Din instead of using civil court to resolve the parties' grievances against Mr. Moshe. This conference was recorded. See Exhibit 4.

29. In an email dated July 11, 2023, Neuberger and Blueberry's Representative Alan Miller had numerous communications wherein Defendant Neuberger, providing unsolicited legal advice, attempted to persuade Blueberry to participate in the Bais Din process as an alternative to prosecuting civil claims in a Court

of law.    Thereafter, Neuberger, breaching the alleged confidentiality of the identity of the participants (which was done in an attempt to undermine Blueberry's position), communicated Alan Miller's communication to the group of investors. Neuberger continued at that time to reiterate that he did not represent parties or the Bais Din and attempted to describe his role as "simply to organize the process." See Exhibit 4.

30.    On July 16, 2023, Neuberger wrote to several parties, including Blueberry, advising them, "I am hoping that the Bais Din will impose on everyone that signs on, a Confidentiality Obligation, to minimize the publicity and to limit discussion among only the Baalei Devorim ("Parties Involved") and the Bais Din," and that, "Unfortunately, we need to get everyone on board ASAP, for the benefit of ALL." See Exhibit 5

31.    To add pressure to the parties, including Blueberry, Neuberger provided unsolicited legal advice added, "IT IS MY STRONG RECOMMENDATION THAT IF ANY OF THE COMMISSION AGENTS DO NOT SIGN ON, THAT THE AFFECTED INVESTORS REQUEST THAT THE BAIS DIN SEND EACH, A HAZMONAH (a "Rabbinical Summons"). THE SAME IS TRUE OF GUARANTORS. ANY PERSON WHO HAS A CLAIM AGAINST A GUARANTOR, SHOULD NOTIFY THE BAIS DIN AND THAT THE BAIS DIN SEND EACH, A HAZMONAH." (emphasis added).See Exhibit 5.

32.    Defendant Neuberger's communications, including the ones cited herein and numerous others, were intended to create and

actually created communal pressure brought to bear against any party who would not agree to sign onto arbitration before the Bais Din and execute a confidentiality agreement to be submitted to the arbitration panel. When undertaking these communications, Neuberger knew and intended that the submission to arbitration he proposed and the confidentiality stipulation he sought was the alternative to allowing those parties to enforce their constitutional rights to seek redress of their claims through civil courts. This pressure was clearly being applied to prevent Mr. Moshe's actions from becoming known in the community at large and to the Federal and State civil and criminal authorities.

33. The communication of July 16, 2023 was followed up with a meeting on July 19, 2023, wherein Blueberry met with Neuberger, Rabbi Ari Marburger of the Bais Din, and Steven Yurowitz (Leor Moshe's counsel) to discuss Blueberry's litigation against Mr. Moshe. The meeting was called to discuss whether it made sense for Blueberry to enter arbitration at the Bais Din rather than continue with its litigation. See Exhibit 4.

34. During the July 19, 2023 meeting, Blueberry made clear it believed Leor Moshe was hiding assets under other entity names and trusts, among other things. Rather than address those concerns substantively, Neuberger provided unsolicited legal advice, and Mr. Yurowitz responded that if Blueberry continued in civil court rather than discontinuing the Fraud Case and using the Bais Din

process, they and Mr. Moshe would retaliate and seek to shift blame onto Blueberry as a culprit whom the other victims of Leor Moshe's activities should pursue instead. Those threats proved unfruitful, and Blueberry rejected Defendants' efforts to compel Plaintiff Blueberry to join the Bais Din.

35.    The ongoing pressure campaign to force the parties, including Blueberry, to join the Bais Din process continued on July 25, 2023, when Neuberger wrote: "One of the commission agents have signed. Two have not and both are being represented by Counsel. One of the counsel has recommended that his client join and that person seems to be seeking rabbinical direction. The other counsel has merely said that he is considering. If either one does NOT participate, then it would be my strong recommendation that everyone that did sign join in to a request for a Hazmonah being issued to any commission agent that has not joined." Once more, Neuberger was threatening Blueberry that he would use communal pressure and other intimidation tactics against it and other parties to order to coerce them into joining the Bais Din rabbinical arbitration process, in derogation of their rights to seek civil redress in Court. See Exhibit 6.

36.    By August 7, 2023, Defendant Neuberger advised that a required number of investors, 35, have indicated they would be joining the Bais Din.  As to holdouts, Neuberger requested that "[a]ny positive pressure that any of you could take to encourage

these people to join would be great." Defendant Neuberger called on the investors and the community to place pressure on the holdouts to join the Bais Din process. See Exhibit 8.

37. It was also in August of 2023, when Neuberger first interfered with an agreement between Blueberry and litigant Moshe. Specifically and shockingly so, when Neuberger obtained knowledge that Moshe was on the brink of settling the pending litigation, Neuberger provided unsolicited legal advice to Moshe that he could not settle with Blueberry and took necessary steps to stop the settlement. After it was clear that Moshe would follow his directive, Neuberger continued his campaign of attempting to force Blueberry to join the Bais Din proceeding.

38. Thereafter, in early September of 2023, Defendant Neuberger held a conference with third-parties concerning the Bais Din process to garner suggestions as to how Leor Moshe can comply with a Bais Din award, marshal his assets, claw back investments to be redistributed among the investors, sell his $2,000,000 home, provide for living quarters for Leor Moshe's family, and conduct a forensic audit and evaluation of Moshe's assets and liabilities. He did so to the collective group of Moshe's victims, without any consideration to the different priorities, positions, or implications concerning all investors, guarantors and other parties. See Exhibit 8.

39.  In the interim, there were discussions with Neuberger, the Firm's associates, Yurowitz and investors concerning the appointment of a forensic accountant to commence review of Leor Moshe's assets.  See Exhibit 8.

40.  On September 7, 2023, Blueberry's representatives met once again (via Zoom) with Neuberger and Mr. Yurowitz, wherein it was represented to Plaintiff Blueberry that the Fraud Case cannot resolve amicably absent Plaintiff Blueberry's participation in the Bais Din process. See Exhibit 9.

41.  Throughout the pressure campaign, Defendant Neuberger was working in collaboration with counsel for Mr. Moshe, Steven Yurowitz, developing "a comprehensive approach that takes into account securing investors, dealing with the 'home'; dealing with the commission agents and dealing with the guarantors." This effectively placed the Defendants in a conspiracy with Mr. Moshe and Attorney Yurowitz to secret information and limit the repercussions of Mr. Moshe's Ponzi scheme from the community at large and the authorities, despite the apparent criminal nature of Mr. Moshe's conduct.

42.  Defendant Neuberger in an email wrote again to the group of Leor Moshe's creditors/victims, pressuring them all to join the Bais Din process while providing advice that it "will maximize your recovery." Defendant Neuberger stated: (1) upon 35 investors agreeing to the process, they will start the Bais Din process

(ignoring the other investors); (2) for those who participate a confession of judgment would be entered and recommended recorded, in order to give "those beneficiaries of the Judgement a priority to the people who decide to go their own" and effectively giving those who agree to the Bais Din process an unfair and unlawful priority and assurance regarding Leor Moshe's assets, to the detriment of non-participating investors; (3) that it would be unclear what the ultimate determination of treatment would be for those who lent money to Moshe rather than investors, and the need for them to join the Bais Din; (4) Neuberger became involved in the matter at the request of Askonim in Lakewood; among other plans and thoughts. A zoom call was held later that evening, which was recorded. See Exhibit 10.

43. On September 18, 2023, despite not representing Leor Moshe and despite not being admitted to practice law in New Jersey, Defendant Neuberger advised that he negotiated a deal with Leor Moshe's alleged single largest creditor/investor, whose alleged net claim was $12.5 Million, who he stated tentatively agreed to the Bais Din method and proportional payout to other creditors involved, despite the fact that the large creditor is non-Jewish and without regard to the priority and position of the other creditors and investors. See Exhibit 11. While Neuberger continued his barrage of emails and contacts, he commenced skewing

the communications towards this alleged single largest creditor/investor, whom he called "Cooperator" at times.

44. Following the July and September, 2023 meetings, Defendant Neuberger provided unsolicited legal advice through numerous communications over the ensuing months, cajoling, berating, and threatening Blueberry in a continuing effort to get it to waive its rights to civil litigation and join in the Bais Din. On September 22, 2023, Neuberger used this alleged agreement with the Cooperator to pressure and intimate Blueberry to join the Bais Din. See Exhibit 12. Also on that same date, Defendant Neuberger sent an email to the group indicating that a civil action had been filed in New Jersey Superior Court against Leor Moshe, in which he expressly acknowledged that they have collateral and that he is pressuring the creditor, Blueberry, to join the Bais Din process, but stating that if Blueberry joins it would be limited to recovering up to the value of its principal. See Exhibit 13.

45. Four days later, on September 26, 2023, Defendant Neuberger held a conference with some investors concerning their opinion and attempting to garner a consensus concerning the sale of Moshe's residence, whether his family should rent or purchase a modest home, and/or what would happen with the proceeds of the sale. See Exhibit 14.

46. With knowledge that the agreement with the "Cooperator" would result in favoritism/preference in negotiation, Defendant

Neuberger continued to negotiate a cooperation agreement and other documents he claimed would move the Bais Din process forward. Defendant Neuberger and the Cooperator allegedly threatened that "[i]f these people refuse to come to the Bais Din, he will proceed against them in Civil Court."  Defendant Neuberger readily communicated that threat to the group of investors and creditors, including Blueberry.  See Exhibit 15.

47.  As noted in one email dated the 6th of October, 2023, "I expect to be able to circulate a "revised" Shtar Berurin and a Cooperation Agreement with the single largest creditor…$12. 5 MM +/- non jew. His joinder will be of enormous benefit. He is willing to proceed against the recalcitrant people and is NOT obligated to go to Bais Din," the one "recalcitrant" entity being Blueberry. As noted by Defendant Neuberger in a later email, "(t)he beauty of the Cooperation Agreement is that Cooperator and its counsel will pursue civilly anyone who owes money to the pot and who chooses NOT to participate in the Bais Din process." As the most prominent "recalcitrant" party, that missive was clearly directed at Blueberry.  See Exhibit 15 & 16.

48.  When Defendant Neuberger realized that not every creditor or investor was intending to join the Bais Din, he commenced intensification of his threats to others, specifically Alan Miller.  In an October 19, 2023 Email, Defendant Neuberger openly threatened: "Be very careful..there is a large number of

guys that want to go after you…"; "In Bais Din you have an argument… in Civil law you are dead."; "How could u be stupid enough to send Maniscalco a challenge"; "I am trying to help y and u have made impossible" and "You incurred liability by taking an assignment of the wrong entity". In so doing, Neuberger was providing legal advice regarding matters of New Jersey law and a legal matter pending in New Jersey despite the fact that Neuberger is not admitted to practice law in the State of New Jersey. See Exhibit 17.

49.   Later that evening, there was a conference held between Defendant Neuberger and Blueberry's representative Alan Miller.

50.   Thereafter, Defendant Neuberger continued to advise his prioritization of the largest creditor, introducing him/her to the Forensic CPA hired to review the assets and liabilities of Leor Moshe, granting the creditor the right to sell his collateral now and reduce his claim by that amount, ignoring the alleged previous determination that all Moshe's assets would be brought to the Bais Din for distribution.  See Exhibit 18.

51.   After Alan Miller advised Neuberger that there was a group of over 10 individuals, whose claims collectively exceeded the alleged largest creditor, who would not agree to the terms and/or join the Bais Din, and that Blueberry had retained outside litigation counsel and planned on filing a complaint in civil court, Neuberger and the Firm realized their underlying,

overriding goal of keeping Leor Moshe's deeds private would not be achieved. Defendant Neuberger continued to prioritize the alleged largest creditor and intensified his harassing activities.  See Exhibit 18.

52.  In response, Defendant Neuberger threatened to disclose Blueberry's email to the entire group of investors, which was contrary to the goal Neuberger himself had previously expressed throughout the Bais Din process to keep investors confidential. Neuberger further stated, despite the fact that an arbitration agreement is a contract and that legally concessions and/or stipulations can be required in connection therewith: "[t]rying to force concessions as a condition to going to Bais Din is in my view wrong and borders on something that might be improper from a Halachic and Civil perspective."  He then shared the email with all of the creditors.  See Exhibit 18.  It was also in this email that Neuberger stated he expected to ask the Bais Din to pay for the time spent by the Firm in connection with the matter.  See Exhibit 18.

53.  On October 26, 2023 and October 29, 2023, Neuberger scheduled another zoom call with the investors/creditors.  At that time, Alan Miller and Blueberry decided they no longer would be receptive to such further communications.

54.  By Sunday, October 29, 2023, the Shtar Berurin-Arbitration  Agreement,  which  is  conditioned  on  the

"Cooperator"/largest creditor signing the Cooperation Agreement, was forwarded to all investors/creditors by Neuberger.  <u>See</u> Exhibit 19.

55.  On October 29, 2023, despite the fact that he was not an attorney admitted to practice law in the State of New Jersey and that he was opining on matters of New Jersey law to parties he knew to be located in the State of New Jersey, Defendant Neuberger sent to the group of investors/creditors an email advising the group of the impact of signing the arbitration agreement, the consequences, and the hope that due to Leor Moshe's cooperation it can act as a clearinghouse to deal with all claims in an equitable way.  According to the email, "Cooperator has stated that will pursue civilly anyone who owest money and chooses not to participate in the Bais Din Process."  The Email specifically provides: "[t]he Forensic Auditor will be auditing:…Miller.  I know that he has gotten some assets from Leor.  If he does NOT cooperate, the Cooperator and his lawyer will pursue."  These specific threats were made with the intent to intimidate, threaten, harass, and maliciously injure Blueberry and Miller, to compel them to relinquish their claims in Court and join the Bais Din, to compel them to reduce the recovery sought so that it matched up with Neuberger's preferred resolution, and to prevent Blueberry and Miller from publicly airing the fraudulent actions committed by Leor Moshe.  <u>See</u> Exhibit 16.

56.    Thereafter, Alan Miller advised Defendant Neuberger: "Please be advised we are going to include you in our suit.  You are tortious interfering and threatening us to join a jurisdiction that we oppose.  You need to back down now!!  Furthermore, we have respect for the Bais Din but since you are keen to include them we will be noticing Bais Din of their involvement.  You need to stop these bullying tactics or we will dig our heels in further…." See Exhibit 16.

57.    Thereafter, on October 29, 2023, Defendant Neuberger escalated his pressure tactics, stating "I am not sharing this exchange with the Cooperator or his counsel, but once the Cooperation Agreement is signed, I will be forced to, unless of course you sign the Shtar Berurin.  Even then your position will be audited just like everyone else," thereby continuing the pressure to join the Bais Din and generating the impression it was likely closer to the Cooperator's suit against any investor/creditor who does not join the Bais Din process.  See Exhibit 16.

58.    Defendant Neuberger continued to disparage Alan Miller, while using him as a method of encouraging everyone to execute the Shtar Berurin.  Continuing to lift the confidentially as to Alan Miller and attempt to ostracize him in order to persuade him to execute the Shtar Berurin/Arbitration Agreement, Neuberger wrote:

        Overnight, I received a number of text from

Mr. Alan Miller:
1. "You are an in idiot"
2. You have moved from an idiot to a fool. We are adding you to a tortious action you are threatening us since we are not joining" (sic)
3. Threatening us
4. I am done playing your games
5. You are manipulating and trying to intimidate use.

I am not threatening playing games, manipulating or trying to intimidate ANYONE. The simple fact is that Miller has filed a civil action against Leor. I assume that he thinks that it will help him collect what he is owed.
My role and aim was to find a PATHWAY to recover as much as possible for the benefit of **_EVERYONE_** guided by Halacha and a Bais Din.
I have no ox in this match. I got roped in to try and minimize and mitigate a Chilul HaShem.
The goal if you and even Miller signs Shtar Berurim is to get an immediate judgment against Leor, that will be recorded in the form of an "award" from the Bais Din that will, in my vire come ahead of any Judgment that Mr. Miller might obtain. The key is here RECOVER as much as possible and share the proceeds EQUITABLY… spread among all of the creditors including the single largest creditor, the Cooperator.
Mr. Miller claims in an earlier email that I shared that he and a group wee filing their own lawsuit. I CHALLENGE HIM OR ANYONE ELSE INVOLVED TO EXPLAIN WHAT A CONSENT JUDGMENT BY LEOR IS NOT BETTER. I CHALLENGE HIM AND ANYONE ELSE WHY A COOPERATIVE FORENSIC AUDIT OF LEOR, HIS FAMILY, THE COMMISSION AGENTS. THE INVESTORS WHO MAY GOTTEN BACK MORE THEN THEY WERE ENTITLED ANDE CH OF YOU IS NOT THE CORRECT ROUTE TO GO. IF MR. MILLER HAS A BETTER WAY TO GET YOUR MONEY BACK, HE SHOULD TELL YOU EACH HOW AND WHEN.
**In the meantime, I urge each of you to sign**

> **the Shtar Beruim and send it to me so that I can conclude the Cooperation Agreement and get the Forensic Audit started. I did receive some already. I urge you to do ASAP.**

[Emphasis in the original]. <u>See</u> Exhibit 19. On October 30, 2023, Neuberger forwarded another copy of the draft arbitration agreement. <u>See</u> Exhibit 19.

59. Thereafter, on November 7, 2023, Defendant Neuberger forwarded a copy of the Consent Award-Judgment Moshe allegedly had agreed to be issued by the Bais Din and recorded in the public records. Neuberger contended he was waiting for the Cooperator to agree to the form of Judgment. Neuberger again encouraged everyone to execute the Shtar Berurin and stated that after Cooperator approved the draft papers, he would ask the creditors and investors to proceed. Neuberger stated: "The Judgment will give PRIORITY to all creditors and investors and even those that have not signed by the time this is issued, we still be free to join the Bais Din process and benefit." <u>See</u> Exhibit 19.

60. By November 13, 2023, Neuberger advised that he had received the assent of 35 creditors/investors to commence the Bais Din process while also expecting a few more to join. At that time, Neuberger stated that he was waiting for the Cooperator to sign the agreement. "[I]t is our intention to seek the Consent Judgment from the Bais Din and record it in the Court records of Ocean County, which will give the Bais Din Judgment a priority." In so

doing, Neuberger was once again opining to New Jersey residents on matters of New Jersey law despite not representing any party and despite not being admitted to practice law in the State of New Jersey. Neuberger once again prioritized and applied favoritism toward the Cooperator and stated he will set up a meeting with the Cooperator and Bais Din and then advise the other creditors/investors as to the meeting.  See Exhibit 19.

61.  On or about November 30, 2023, Neuberger communicated further with Alan Miller regarding this matter, despite Miller's clear statements that Neuberger should not communicate with him further regarding the Bais Din arbitration Defendants preferred to see occur.  See Exhibit 18.

62.  Again, Neuberger interfered with the settlement of the Fraud Lawsuit, advising Moshe that he could not settle the action and essentially stopping the agreement with Blueberry to settle.

63.  On November 30, 2023, Defendant Neuberger continued with pressure tactics, advising that he has "a comprehensive agreement with the single largest creditor ($12.5MM less the value of same collateral that he has, in hand) and have signed up another $6.5MM and have been assured by a Rov, who called me today, that another creditor who is owned $6M is joining.  If the $30MM number is correct, we have around 81%.  I would hope that the Millers will join in the process.  I suspect that if they do not that the

Cooperator will through his counsel be in touch with them directly." <u>See</u> Exhibit 18.

64. On December 3, 2023, Neuberger purported to provide an update to investors/creditors who had not joined the Bais Din process. He wrote: "I am pleased to report that we have received a sufficient number of Participants to proceed PLUS we have entered into a Cooperation Agreement with the single largest investor (a non-Jew)-gross $12.5 MM to be adjusted by the value of some collateral that he has-where we think that on $30MM universe, we have 81% participation." Neuberger stated that he was providing another opportunity to join the Bais Din proceedings and that the Bais Din has agreed for its retainer to be paid from funds that Leor Moshe has provided. <u>See</u> Exhibit 20.

65. On December 14, 2023, while stating that he wishes for Alan Miller to stop calling and texting him, Neuberger stated: "Miller and or his company as assigned of the Lior Moshe fraudulent enterprise may be responsible for millions of dollars of losses. While he might discount his exposure, he and his brother are successors in interest to the tortfeasor entity. I know how difficult it is to give advice to someone who thinks he is smarter than everyone else, but as a Jew I have an obligation to give fair warning. In fact, what he did as successor may be cast in stone, as of now. You might need to seek legal counsel, as I am not sure what role you played in creating the successor in

interest position that the Millers now enjoy." Neuberger further stated: "I intend to seek Halachic direction as to what civil law steps I may take in light of Mr. Miller's refusal to go to the Bais Din, as I do not react well to extortion or threats." See Exhibit 21.

66. Defendant Neuberger continued to make menacing phone calls to Alan Miller, including expressing threats, sexual harassment, and communal pressure if Miller did not direct Blueberry to join the Bais Din.

67. Specifically, Defendant Neuberger made the following comments having a sexual connotation, which had no other purpose than to sexually harass, intimidate, and embarrass Alan Miller:

"Alan I see you like holding your big balls it makes you feel like somebody but you're not";

"You think you are a genius when you hold your big testicles;" and

"You look amazing send a picture of yourself with no shirt."

68. Defendant Neuberger made the following threats to communally shame Alan Miller, specifically stating: "I am going to throw you out of the community…I am going to end you if you don't do what I tell you to do and comply…"

69. In January 2024, Alan Miller requested a contact at the Firm to make an ethical claim. In response, Neuberger stated,

"No, when I see the claim, I will decide."  He then continued to encourage Miller to join the Bais Din process.  See Exhibit 22.

70.  Alan Miller requested that another attorney to make the ethical claim be appointed because the matter involved Neuberger, where Neuberger responded stating he is that attorney.  In response, Neuberger threatened that if Miller files a claim against him and his firm, Neuberger will have Miller expelled from the community and would make sure he is shunned by every Synagogue. See Exhibit 22.

71.  On January 10, 2024, Neuberger continued to encourage Blueberry to join the Bais Din.  See Exhibit 1.

72.  Defendants' series of communications crossed the line of legal posturing into the arena of harassment, intimidation, and unlawful behavior. By continuing to threaten Blueberry for not joining the Bais Din, agreeing to limit its recovery, and keeping its claims against Leor Moshe private and away from a venue where criminal authorities could view them, Defendants subjected Blueberry to acts of coercion and intimidation by repeated assertions of retaliatory litigation, being ostracized from the local community, and loss of priority/ability to recover for the wrongs done by Leor Moshe. Defendants' continuing efforts to try to conceal Mr. Moshe's actions in the mire of the Bais Din arbitration process may have served the interests of Leor Moshe, but it most certainly would not have served the interests of

Blueberry. By interfering in the Fraud Case and conspiring with Mr. Moshe and his counsel to deprive Blueberry of its due process rights to pursue its claims in a Court of law, Defendants prevented Blueberry from settling its matter with Mr. Moshe, which in turn needlessly and vexatiously raised the costs of litigation for Blueberry and made recovery more uncertain. Those increased costs and burdens were proximately caused by the Defendants' actions set forth herein. Moreover, the Firm unilaterally interfered with the ongoing litigation, despite not having been retained by any party, mostly through an attorney who was not admitted to practice law in the State of New Jersey, and then invoiced the parties in the Fraud Case for alleged services rendered in the amount of $250,000 and sought a proportional payment from Blueberry.

73. Most alarmingly, this is not the first time that Defendants have committed behavior such as this. Defendant Neuberger has been the subject of a lawsuit alleging interference with contracts of third parties. In <u>Brown v. Neuberger</u>, 2016 Md. App. LEXIS 409 (Court of Special Appeals of Maryland, May 31, 2016), the Browns sued Neuberger for tortious interference of its attorney-client relationship with Duane Morris after Neuberger pressured Duane Morris to drop the Browns as a client under the implied threat that if Duane Morris did not do so it would lose PNC Bank as a client.

74. These kinds of interference and threats, thus, are repeated behavior for Defendants, who have caused significant damage to Blueberry, Miller, and others.

## FIRST COUNT

75. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

76. As set forth above, Defendants engaged in continuous actions seeking to deny Blueberry's rights of due process with respect to prosecuting its claims in the Fraud Case. Defendants not only chose to interfere in the Fraud Case by seeking to coerce Blueberry to drop its claims asserted therein, but it also sought to intimidate Blueberry by threatening it with retaliatory audits and litigation in the event it chose not to join the Bais Din. Moreover, by inserting themselves into the Fraud Case and interfering with settlement negotiations between Blueberry and Mr. Moshe, Defendants prevented Blueberry from settling its matter with Mr. Moshe, which in turn needlessly and vexatiously raised the costs of litigation for Blueberry. Finally, the Defendants inappropriately billed Blueberry and other parties for their unsolicited actions and sought a proportionate amount from Blueberry for their alleged outstanding invoice in the amount of $250,000.00. Each of these acts, either independently or in

conjunction with one another, were done willfully, intentionally, and were designed to interfere with Blueberry 's claims, property rights, and contractual relationship in the Fraud Case.

77.  Defendants had full knowledge of the existence and pendency of the Fraud Case, of Blueberry's contracts with Leor Moshe and his company, and of Blueberry 's claims asserted in the Fraud Case. Despite that preexisting knowledge, Defendants, acting with malice and without justification or excuse, intentionally and tortuously interfered with, and continued to interfere with, the Fraud Case and Blueberry's contractual relationship with Leor Moshe. Defendants' acts in that regard were willful and intentional and were accomplished through illegal, improper, and unethical actions.

78.  By interfering in the Lawsuit and conspiring with Mr. Moshe and his counsel to deprive Blueberry of its due process rights to pursue its claims in a court of law, the Defendants prevented Blueberry from settling its matter with Defendant Moshe, which in turn has needlessly and vexatiously raised the costs of litigation for Blueberry and reduced the likelihood of recovery by Blueberry of the funds to which it is entitled.  The Defendants inappropriately billed Blueberry and other parties for Defendants' unsolicited actions and "services" and then sought a proportionate amount from Blueberry for its alleged outstanding invoice in the amount of $250,000.00.  As a direct and proximate result of the

interference by Defendants with Blueberry's property interests in the Fraud Case, Blueberry has been and continues to be damaged in its business and property.

79.  The actions of Defendants in tortuously interfering with Blueberry's contractual relationships and property interests were extreme and were undertaken maliciously, deliberately, and with willful intent to cause harm to Blueberry. Therefore, Blueberry is not only entitled to damages in an amount to be determined at trial, together with all costs, interest, and attorneys' fees, but punitive damages as well.

**WHEREFORE,** Plaintiff Blueberry Funding, LLC demands that a Judgment be entered in its favor and against Defendants Isaac M. Neuberger, Steven J. Willner, and the firm of Neuberger Quinn Gielen Rubin Gibber, P.A., both jointly and severally, for the following relief:

A.  Compensatory damages;

B.  Punitive damages;

C.  Reasonable attorneys' fees, interest, and costs of suit; and

D.  Such other and further relief as the Court may deem equitable and just.

## SECOND COUNT

80.  Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

81.  Blueberry had property interests regarding its claims asserted in the Fraud Case and its contractual relationships with Leor Moshe and his company. Defendants conspired with Mr. Moshe and his counsel, Steven Yurowitz, amongst others, with the intent to interfere in and deprive Plaintiffs of their rights of due process to prosecute their claims against Mr. Moshe in a civil court at law, and to force Blueberry to participate in a rabbinical arbitration proceeding that would have served the interests of Leor Moshe but not the interests of Blueberry.

82.  Those intentional acts were done with a common purpose to do an unlawful act, or to do a lawful act by unlawful means for an unlawful purpose, thereby preventing Blueberry from settling its matter with Mr. Moshe, which in turn has needlessly and vexatiously raised the costs of litigation for Blueberry and reduced its prospects of recovery. As a result of Defendants' conspiracy, the Plaintiffs sustained damages herein, for which it hereby seeks recovery. Therefore, the Plaintiffs are not only entitled to damages in an amount to be determined at trial, together with all costs, interest, and attorneys' fees, but punitive damages as well.

**WHEREFORE**, Plaintiffs, Blueberry Funding, LLC and Alan Miller, demand that a Judgment be entered in its favor and against Defendants Isaac M. Neuberger, Steven J. Willner, and the firm of Neuberger Quinn Gielen Rubin Gibber, P.A., both jointly and severally, for the following relief:

        A.    Compensatory damages;

        B.    Punitive damages;

        C.    Reasonable attorneys' fees, interest, and costs of suit; and

        D.    Such other and further relief as the Court may deem equitable and just.


### THIRD COUNT

83. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

84. N.J.S.A. 2A:53A-21 provides "a person, acting with the purpose to intimate an individual or group of individuals because of race, color, religion, gender, disability, sexual orientation, gender identify or expression, national origin, or ethnicity, who engages in conduct that is an offense under the provisions of the "New Jersey Code of Criminal Justice, Title 2C of the New Jersey Statutes, commits a civil offense". N.J.S.A. 2A:53A-21(a). There

is a private cause of action as a result of the injury sustained, as described *supra* and *infra*. N.J.S.A. 2A:53A-21(b).

85.    Plaintiffs, Blueberry and Alan Miller, assert this third count herein predicated upon Defendants' threats, intimidation, sexual harassment and humiliation, and attempts at coercion, which was described in great detail in the factual section of this amended complaint and at a minimum is a violation of N.J.S.A. 2C:33-4 (harassment); and N.J.S.A. 2C:16-1(bias intimidation).

86.    As noted at length *supra*, Defendants engaged in actions seeking to deny Plaintiffs' rights of due process with respect to prosecuting its claims in the Fraud Case. The Defendants repeatedly and continuously harassed Blueberry and Alan Miller by threatening them for not joining the Bais Din, as well as subjecting Blueberry and Alan Miller to further acts of coercion and intimidation by repeated assertions of retaliatory litigation in the event it failed to join the Bais Din and humiliating statements directed towards Mr. Miller. By interfering in the Fraud Case and conspiring with Mr. Moshe and his counsel to deprive Blueberry of its due process rights to pursue its claims in a court of law, the Defendants prevented Blueberry from settling its matter with Mr. Moshe, which in turn needlessly and vexatiously raised the costs of litigation for Blueberry and reduced their prospects of recovery. Outrageously, Defendants then invoiced Blueberry for alleged services rendered, claiming that Blueberry now owed a debt

to Defendants.  Defendants used the threat of inaction in the Bais Din process in order to threaten Plaintiffs' reputation and business purpose and caused undue duress in an attempt to force Plaintiffs to participate in the Bais Din.  Defendants used the fact that the officers of Blueberry, Alan Miller being one of them, are of the Jewish faith to coerce them into participating in the Bais Din process.  Those increased costs and burdens and reduced likelihood of recovery from Leor Moshe, as well as the alleged liability associated with the unwarranted invoices, were proximately caused by the Defendants' actions discussed herein.

87.  As a result of Defendants' violation, Plaintiffs sustained damages, including damages for emotional distress, herein, for which it hereby seeks recovery. Therefore, Plaintiffs are not only entitled to damages in an amount to be determined at trial, together with all costs, interest, and attorneys' fees, but punitive damages as well.

**WHEREFORE,** Plaintiffs Blueberry Funding, LLC and Alan Miller demand that a Judgment be entered in favor of Plaintiffs and against Defendants Isaac M. Neuberger, Steven J. Willner, and the firm of Neuberger Quinn Gielen Rubin Gibber, P.A., both jointly and severally, for the following relief:

      A.   Compensatory damages;

      B.   Punitive damages;

C.  Reasonable attorneys' fees, interest, and costs of suit; and

D.  Such other and further relief as the Court may deem equitable and just.

**FOURTH COUNT**

88.  Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

89.  This cause of action arises pursuant to the provisions of N.J.S.A. 2C:41-1, *et seq.,* to which Plaintiffs are alleging a violation of said statutory scheme. The Defendants are persons within the meaning of N.J.S.A. 2C:41-l(b).

90.  According to Defendant Neuberger, he was waiting until "a final determination of Bais Din to be paid for the costs of organizing this matter." In the event parties would not agree to submit to the Bais Din arbitration process, Defendants could lose out on getting paid for their time, which on information and belief, was to be billed at the hourly rate of approximately $700.00 per hour. Hence, it appears that Defendants were clearly motivated to make certain that all parties (including Blueberry) dropped their claims and only pursued their matters before the Bais Din.

91.  As noted at length herein, Defendants have conducted and participated in, directly and indirectly, an enterprise within the

meaning of N.J.S.A. 2C:41-l(c) which is engaged in a pattern of racketeering activities in violation of N.J.S.A. 2C:41-2. As set forth in detail above, the Defendants, acting at the direction of the Askonim and in concert with Mr. Moshe and his counsel, among others, did engage in a number of predicate acts which constitute a pattern of racketeering activity which include, but are not limited to, the following:

> A.   On July 16, 2023, Defendant Neuberger threatened a retaliatory legal action against the Plaintiffs and others who chose not to join the Bais Din.
>
> B.   On July 19, 2023, Defendant Neuberger and Mr. Yurowitz noticed Blueberry that if it continued the Fraud Case rather than use the Bais Din process, that they and Mr. Moshe would retaliate and seek to shift blame onto Blueberry as a culprit who the victims of Leor Moshe's activities should pursue instead.
>
> C.   Subsequent to the meetings of July 16 and 19, 2023, the Defendants systematically created communal pressure against any party (including Blueberry) who would not agree to sign onto arbitration before the Bais Din and execute a confidentiality agreement. The pressure being applied by the Defendants was intended to prevent Mr. Moshe's actions from becoming known in the community at large and to criminal authorities.
>
> D.   On July 25, 2023 Defendant Neuberger once again communicated to Blueberry and others that their failure to join the Bais Din would lead to retaliatory litigation being lodged against them.
>
> E.   On September 7, 2023, Plaintiff Blueberry met with Defendant Neuberger and Mr. Yurowitz, who informed Blueberry that it could not settle the Fraud Case outside the confines of the Bais Din arbitration process.

      F.   On October 6, 2023, Defendant Neuberger once more threatened any "recalcitrant" party (there was only one, Blueberry) with retaliatory litigation if they continued to reject participation in the Bais Din.

92.   These predicate acts of racketeering occurring within 10 years of one another and constitute a pattern of racketeering activity within the meaning of N.J.S.A. 2C:41-1(h).

93.   Plaintiffs have been injured in their business by reason of the aforesaid conduct of Defendants and, as a direct and proximate result of the complained of acts, Plaintiffs have suffered substantial damages. As a result of the Defendants' violations of N.J.S.A. 2C:41-1 *et seq.*, Plaintiffs are entitled to treble its damages, plus interest, costs of suit, attorney's fees, and costs of investigation and litigation pursuant to N.J.S.A. 2C:41-4(c).

**WHEREFORE,** Plaintiff Blueberry Funding, LLC and Alan Miller demand that a Judgment be entered in favor of Plaintiffs and against Defendants Isaac M. Neuberger, Steven J. Willner, and the firm of Neuberger Quinn Gielen Rubin Gibber, P.A., both jointly and severally, for the following relief:

      A.   Treble damages, together with costs of suit, including reasonable attorney's fees, costs of investigation, and litigation pursuant to N.J.S.A. 2C:41-4(c);

      B.   Compensatory damages;

      C.   Punitive damages;

    D.   Assessing civil monetary penalties against Defendants pursuant to <u>N.J.S.A.</u> 2C:41-4(a);

    E.   Ordering the restitution of all monies and property unlawfully obtained by Defendants found to be in violation of <u>N.J.S.A.</u> 2C:41-2;

    F.   Such other civil remedies to which Plaintiffs may be entitled to pursuant to <u>N.J.S.A.</u> 2C:41-4; and

    G.   Such other and further relief as the Court may deem equitable and just.

## <u>FIFTH COUNT</u>

94. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

95. Defendant Neuberger and Defendant Willner, acting on their own behalf and for the Firm, provided unsolicited legal advice to Plaintiffs during their attempt to force Blueberry to participate in the Bais Din process rather than proceed with its Fraud Case, in the State of New Jersey.

96. Defendant Neuberger traveled and participated in an in-person meeting regarding this matter, which meeting took place within the State of New Jersey and with residents of the State of New Jersey.

97. Defendant Neuberger represented that he was able to, and actually did, provide legal advice to the Plaintiff Blueberry (and other victims) during the settlement negotiations in the Fraud

Case, provide advice as to the treatment and disposition of Leor Moshe's assets, provide a determination as to the number of attorneys to be involved the Bais Din, provide advice as to the benefits of participating in the Bais Din while advising that there were no negative effects to doing so, provide advice as to the respective priority of recovery for Plaintiff Blueberry and other of Leor Moshe's victims amidst the continued threats from Defendant Neuberger that non-participation would result in the Cooperator suing the nonparticipants, and provided advice as to other matters specified hereinabove.

98.    Upon information and belief, Defendants inappropriately inserted themselves into the Fraud case and, through counsel Yurowitz, advised Leor Moshe not to participate in the settlement negotiations and subsequent consummation of the settlement terms. Defendants advised Plaintiff Blueberry to abandon the settlement negotiations in the Fraud Case, contending the best course of action was to proceed through the Bais Din, despite not being licensed to practice law in the State of New Jersey. Unfortunately, due to Defendants' actions and advice, Leor Moshe declined to finalize the settlement contemplated and then abandoned the settlement negotiations at that time.

99.    Defendant Neuberger was not licensed to practice law in the State of New Jersey at the time of his representation and advice to Plaintiff and other parties in the State of New Jersey.

Accordingly, Defendant Neuberger violated New Jersey law, <u>N.J.S.A.</u> 2C:21-22a, as well as the New Jersey Rules of Professional Conduct, <u>N.J. Rules Prof. Conduct R.</u> 5.5.

100. Defendant Willner was not licensed to practice law in the State of New Jersey at the time of his representation and advice to Plaintiff and other parties in the State of New Jersey. Accordingly, Defendant Willner violated New Jersey law, <u>N.J.S.A.</u> 2C:21-22a, as well as the New Jersey Rules of Professional Conduct, <u>N.J. Rules Prof. Conduct R.</u> 5.5.

101. As a result of Defendant Neuberger's improper conduct, Plaintiffs were damaged as Defendant Neuberger gave unsolicited advice and took any and all steps in order to ensure that the Settlement of the Fraud Case was not finalized or consummated.

102. As a result, due to Defendant Neuberger's interference through the conduct as giving advice on the settlement of the Fraud case was not consummated, resulting in Plaintiff Blueberry experiencing a loss.

103. As a result of Defendant Willner's improper conduct, Plaintiffs were damaged as Defendant Willner participated in all actions to support Defendant Neuberger regarding efforts to have Plaintiff Blueberry and victims join the Bais Din.

104. As a result of the actions of Defendants, Plaintiffs have been unable to resolve their matter with Leor Moshe and have

now allegedly incurred a significant bill for legal services allegedly rendered by Defendants.

105. Through the improper conduct of both Defendant Neuberger and Defendant Willner, the Firm was conducting unauthorized legal representation in the State of New Jersey.

106. Pursuant to N.J.S.A. 2C:21-22a(2), due to the loss incurred by the Plaintiffs as a result of the unauthorized practice of law, the Plaintiffs are entitled to damages that constitute "three times the value of all costs incurred by the victim.... including any fees paid to the defendant for services, costs incurred for attorneys' fees, court costs and any out-of-pocket losses."

**WHEREFORE,** Plaintiffs Blueberry Funding, LLC and Alan Miller demand that a Judgment be entered in favor of Plaintiffs and against Defendants Isaac M. Neuberger, Steven J. Willner and the firm of Neuberger Quinn Gielen Rubin Gibber, P.A., both jointly and severally, for the following relief:

       A.    Compensatory, Consequential and Incidental damages in an amount to be determined at trial but believed to be in excess of $75,000;

       B.    Treble damages for the value of all costs incurred by the victim as a result of Defendants unauthorized practice of law, including any fees paid to the defendant for services, costs incurred for attorney's fees, court costs and any out-of-pocket loses, N.J.S.A. 2C:21-22a;

       C.    Interest;

       D.    Attorney's fees and costs of suit; and

       E.    Such other and further relief as the Court may deem equitable and just.

**JURY DEMAND**

Plaintiffs, Blueberry Funding, LLC and Alan Miller, hereby demand a jury trial on all issues in this Complaint.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Afiyfa H. Ellington, Esq. is hereby designated as lead trial counsel for Plaintiffs.

**LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any arbitration or administrative proceeding. I declare under penalty of perjury that the foregoing is true and correct.

*/s/Afiyfa Ellington*
**AFIYFA H. ELLINGTON, ESQ.**
**Attorney for Plaintiffs**

Dated:    September 23, 2024

**<u>VERIFICATION</u>**

Alan Miller, of full age, duly certifies and states:

I am a member of Blueberry Funding, LLC, and an individual, the named Plaintiffs herein in this action. I have read the foregoing Verified Complaint and hereby certify that the facts set forth in the Verified Complaint are true to the best of my knowledge, information, and belief. I understand that if any of the facts set forth in the foregoing First Amended Verified Complaint are knowingly false, I may be subject to punishment.

Dated: September 23, 2024

_____
                    Alan Miller