# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLUEBERRY FUNDING, LLC, and ALAN MILLER, individually, <br><br> Plaintiffs, <br><br> v. <br><br> ISAAC M. NEUBERGER, *et al.*, <br><br> Defendants. | Case No. 24–cv–06617–ESK–SAK <br><br><br> OPINION |

**KIEL, U.S.D.J.**

    **IN THIS MATTER**, plaintiffs allege that defendants interfered in Blueberry Funding, LLC's (Blueberry) prosecution of its claims against Leor Moshe in another lawsuit. The individual parties in this case adhere to the Orthodox Jewish faith. Plaintiffs allege that defendants used their common religious faith to exert unlawful pressure on plaintiffs to forego a civil action against Moshe and, instead, to join an arbitration proceeding before a religious tribunal that brought together a group of Moshe's victims so as to minimize Moshe's potential criminal exposure and keep the allegations against Moshe within the Orthodox community. When plaintiffs did not succumb to defendants' pressure, plaintiffs allege that defendants unlawfully interfered in plaintiffs' settlement discussions with Moshe.

    Defendants filed a motion to dismiss the second amended verified complaint (Motion) (ECF No. 45). Defendants filed a brief in support of the Motion. (ECF No. 45–1 (Defs' Br.).) Plaintiffs filed a brief opposing the Motion. (ECF No. 48 (Opp'n Br.).) Defendants filed a reply in further support of their Motion. (ECF No. 49.) Because some of the claims are not plausibly alleged, the Motion will be **GRANTED** in part and **DENIED** in part.

## I. FACTUAL BACKGROUND

The facts, herein, are taken from plaintiffs' second amended verified complaint (Complaint) (ECF No. 42 (Compl.)).

Blueberry is a limited liability company located in Lakewood, New Jersey. (Compl. ¶5.) Alan Miller is the Vice President of Blueberry. (*Id.* ¶6.) Defendant Neuberger Quinn Gielen Rubin Gibber, P.A. (the Firm) is a law firm in Maryland. (*Id.* ¶9.) Defendant Issac M. Neuberger is an attorney licensed to practice law in Maryland and the managing partner of the Firm. (*Id.* ¶7.) Defendant Steven J. Willner is an attorney licensed to practice law in Maryland and a principal of the Firm. (*Id.* ¶8.)

On June 6, 2023, Blueberry filed a complaint against Moshe, among other defendants, in the Superior Court of New Jersey, Ocean County (Superior Court), asserting claims for breach of contract and fraud (Fraud Case).[1] (*Id.* ¶17.) Blueberry alleges that Moshe made false and fraudulent representations in a "Ponzi scheme" that led to Blueberry transferring $2 million to another company. (*Id.* ¶¶14–15.) There were other victims of Moshe's "Ponzi scheme." (*Id.* ¶16.)

Moshe adheres to the Orthodox Jewish faith and resides in a community of "like-minded individuals" in or around Ocean County, New Jersey. (*Id.* ¶21.) Moshe, through his attorney, Steven Yurowitz, reached out to religious leaders (the "Askonim") in Lakewood to retain counsel to preside over a Bais Din, a rabbinical court proceeding. (*Id.*) Moshe wanted a Bais Din to resolve the claims against him related to the Ponzi scheme so that he "could minimize the likelihood of potential criminal charges and keep his illicit activities

---

[1] *Blueberry Funding, LLC v. Moshe et al.*, OCN–L–001301–23. In February 2024, the case was removed to this Court. *See Blueberry Funding, LLC v. Moshe et al.*, 24–00687 (ECF No. 1). I remanded the case to the Superior Court in July 2024. *Id.* (ECF Nos. 49, 50).

relatively quiet from the public at large." (*Id.*)  The Askonim turned to Neuburger, a member of Baltimore's Orthodox Jewish community, to "get[] Moshe's victims together."  (*Id.* ¶¶ 22, 23.)

From June 29, 2023 to August 7, 2023, Neuberger exchanged hundreds of emails with the victims, including with Miller, who acted as Blueberry's representative.  (*Id.* ¶ 25, 27.)  In the communications, Neuberger asked the victims to participate in the Bais Din to resolve the claims against Moshe.  (*Id.* ¶¶ 23–33.)  For example, Neuberger emailed the victims to advise them of the status of a "Shtar Berurin," which was a proposed "arbitration agreement to participate in the Bais Din."  (*Id.* ¶ 26.)  He also told the victims that neither he nor the Firm would be representing any of the victims before the Bais Din and that the victims should retain one attorney to represent all of them.  (*Id.*)  Neuberger also told the victims that their identities would be kept confidential unless permission was granted to provide a victim's identity to other victims.  (*Id.*)

On July 10, 2023, Blueberry advised Neuberger that it did not wish to participate in the Bais Din.  (*Id.* ¶ 28.)  Despite Blueberry's decision not to participate, Neuberger continued to try to convince Blueberry to join the arbitration and offered unsolicited legal advice to Blueberry.  (*Id.* ¶¶ 30–35.)  Neuberger also identified Blueberry to the group of victims without Blueberry's consent.  (*Id.* ¶ 30.)

By August 7, 2023, Neuberger convinced 35 victims to participate in the Bais Din.  (*Id.* ¶ 37.)  With respect to the victims who had not yet agreed to participate in the Bais Din, Neuberger asked those who had agreed to the Bais Din that "[a]ny positive pressure that any of you could take to encourage these people to join would be great."  (*Id.*)  Neuberger also wrote in an email to the victims that had not agreed to arbitration that joining the Bais Din "will maximize [their] recovery."  (*Id.* ¶ 43.)

3

In August of 2023, once Neuberger discovered that Moshe and Blueberry were about to settle the Fraud Case, Neuberger "provided unsolicited legal advice to Moshe that he could not settle with Blueberry[,] and [Neuberger] took necessary steps to stop the settlement." (*Id.* ¶ 38.) The interference with the prospective settlement "needlessly and vexatiously raised the costs of litigation" for plaintiffs. (*Id.* ¶ 3.) In an October 19, 2023 email to Miller, Neuberger said "[b]e very careful … there is a large number of guys that want to go after you … [i]n Bais Din you have an argument … in [c]ivil law you are dead … I am trying to help y[ou] and [yo]u have made [that] impossible … and [y]ou incurred liability by taking an assignment of the wrong entity." (*Id.* ¶ 49; *see* ECF No. 42–17.) Although defendants had no interest in the outcome of the Fraud Case, plaintiffs allege that they "nonetheless voluntarily chose to engage in a pattern of conduct designed to coerce and intimidate Blueberry into dropping the [Fraud Case] and instead join the Bais Din." (*Id.* ¶ 20.)

Plaintiffs assert claims for: (1) tortious interference; (2) conspiracy; (3) violation of N.J. Stat. Ann. § (Section) 2A:53A–21, (the Bias Act); (4) violation of N.J. Stat. Ann. § 2C:41–1, *et seq.*, New Jersey's Racketeer Influenced and Corrupt Organizations Act (NJRICO); (5) unauthorized practice of law, under New Jersey Rules of Professional Conduct and N.J. Stat. Ann. § 2C:21–22a; and (6) emotional distress. (*See id.* ¶¶ 93–133.)

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure (Rule) 12(b)(1) and 12(b)(6) because: (1) the Establishment Clause precludes the Court from exercising jurisdiction over this matter (Defs' Br. pp. 11–13); and (2) the Complaint fails to state a claim upon which relief may be granted. (*Id.* pp. 15–36.)

## II. STANDARD

### A. Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), courts must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Makky v. Chertoff*, 489 F. Supp. 2d 421, 429 (D.N.J. 2007). A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." (*Id.* at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

### B. Establishment Clause

The First Amendment provides that "Congress shall make no law respecting an establishment of religion[.]" U.S. Const. amend. I. The Establishment Clause requires "that a law or regulation not foster excessive governmental entanglement with religion." *Klagsburn v. Va'ad Harabonim of Greater Monsey*, 53 F. Supp. 2d 732, 737 (D.N.J. 1999). "Excessive

entanglement may occur when judicial review of a claim requires" examining religious doctrine. *Id.* The Establishment Clause "prohibits courts from determining underlying questions of religious doctrine and practice." *Id.* To determine whether the Establishment Clause prohibits a court from exercising jurisdiction over a case, a court "must consider the specific elements of the plaintiffs' claim." *Id.* at 739.

Defendants argue that the actions underlying plaintiffs' claims—specifically as to Neuberger—were conducted based on Neuberger's religious faith and Orthodox Jewish law, and thus, are "ecclesiastical in nature." (Defs' Br. 11–13.) Plaintiffs counter that "[d]efendants fail to even argue, much less establish, that this doctrine is relevant to the elements of [p]laintiffs' claims, as opposed to general background to the parties' faith." (Opp'n Br. p.17 (emphasis omitted).)

As more set forth below, however, I conclude that plaintiffs have not plausibly alleged most of the claims against defendants. Accordingly, I do not address the potential prohibitive application of the Establishment Clause to plaintiffs' claims. However, I note that if plaintiffs file a further amended complaint, I likely will require a developed record before being able to resolve whether plaintiffs' claims are barred by the Establishment Clause. *See Fields v. Speaker of the Pa. House of Representatives*, 251 F. Supp. 3d 772, 789 (M.D. Pa. 2017), *aff'd*, 936 F.3d 142 (3d Cir. 2019) (finding that challenge to legislative prayer policy survived Rule 12 scrutiny, but noting that "Establishment Clause issues are inherently fact-intensive, and we must resist the academic intrigue of casting the salient inquiry too narrowly at this juncture").

### III. DISCUSSION

#### A. Tortious Interference (First Count)

"One who intentionally and improperly interferes with another's prospective contractual relation … is subject to liability to the other for the

6

pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation[,] or (b) preventing the other from acquiring or continuing the prospective relation." *Nostrame v. Santiago*, 61 A.3d 893, 901 (N.J. 2013) (citing Restatement (Second) of Torts § 766B). The interference is intentional "if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Micro Image Techs., Inc. v. Olympus Corp. of the Americas*, 20–18781, 2022 WL 17132156, at *4 (D.N.J. Nov. 22, 2022).

A tortious interference claim also requires "a showing of malice." *Onyx Enter. Can., Inc. v. Royzenshteyn*, 23–02913, 2025 WL 62834, at *13 (D.N.J. Jan. 8, 2025). The interference is malicious when the harm was inflicted intentionally and without justification. *Id.* at *12. Examples of "malice" include "[v]iolence, fraud, intimidation, misrepresentation, criminal or civil threats, and/or violations of the law[.]" *Id.* (internal quotations omitted).

Here, with respect to interference with the settlement, plaintiffs fail to sufficiently plead facts showing that defendants—specifically Neuberger—maliciously interfered with settlement negotiations between plaintiffs and Moshe in the Fraud Case.[2] Plaintiffs summarily allege only that Neuberger took intentional steps to stop any settlement between plaintiffs and Moshe, but none of these allegations show the violence, fraud, intimidation, misrepresentation, or threats to establish malice. (*See* Compl. ¶¶ 38, 63.) Moreover, the allegations simply recite the elements of a tortious interference claim. (*See id.* ¶ 95 ("Defendants, acting with malice and without justification or excuse, intentionally and tortiously interfered with … the Fraud Case and Blueberry's contractual relationship with Leor Moshe.").)

---

[2] For this section, I will assume that defendants "intentionally interfered" with the prospective contract—the settlement between plaintiffs and Moshe.

7

Likewise, the Complaint fails to specify *how* defendants interfered in the Fraud Case. The Complaint certainly details an ongoing pressure campaign to convince Blueberry to join the arbitration before the Bais Din, (*see, e.g.*, *id.* ¶94), but it lacks factual basis for a plausible claim that defendants tortiously interfered with the Fraud Case or the settlement discussions. Plaintiffs' reliance on conclusory statements, with nothing more, is not enough to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 668 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Som Maior Audio E Video, Ltda. v. Creston Elecs., Inc.*, 20–19864, 2021 WL 5770259, at *5 (D.N.J. Dec. 3, 2021) (finding allegations "that parrot the tortious interference legal standard are insufficient").

Accordingly, the First Count will be dismissed.

### B. Bias Act (Third Count)

Section 2A:53A–21a provides that "a person, acting with purpose to intimidate an individual ... because of religion ... who engages in conduct that is an offense under the provisions of the 'New Jersey Code of Criminal Justice,' Title 2C of the New Jersey Statutes, commits a civil offense." Plaintiffs allege that defendants violated the following underlying criminal offenses in their attempts to pressure plaintiffs to participate in the Bais Din: (1) harassment, in violation of N.J. Stat. Ann. §2C:33–4; (2) bias intimidation, in violation of N.J. Stat. Ann. §2C:16–1; (3) criminal coercion, in violation of N.J. Stat. Ann. §2C:13–5; and (4) threat by extortion, in violation of N.J. Stat. Ann. §2C:20–5. (Compl. ¶103.) Plaintiffs assert that defendants "used the fact that the officers of Blueberry, Alan Miller being one of them, are of the Jewish faith to coerce them into participating in the Bais Din process." (*Id.* ¶104.)

However, the Court need not decide whether defendants violated any of these underlying criminal offenses, because plaintiffs have not shown that defendants, when violating a criminal offense, "intimidate[d] an individual …

*because of religion*" as the Bias Act requires. *See* N.J. Stat. Ann. §2A:53A–21a (emphasis added). Plaintiffs have not sufficiently pled that defendants harassed, intimidated, coerced, or threatened Miller with extortion because of Miller's Jewish faith.

Plaintiffs allege that the Askonim retained Neuberger to gather the victims, including plaintiffs, to participate in the Bais Din. (Compl. ¶¶22, 25.) The Complaint may plausibly allege a campaign, for example, to pressure plaintiffs to arbitrate their claim against Moshe before the Bais Din, but it does not assert any facts to plausibly allege that the harassment was aimed at Miller *because of his* Orthodox Jewish faith. Said differently, plaintiffs' Orthodox Jewish faith may have provided a mechanism by which defendants could apply pressure on Miller to join the Bais Din. The Askonim could only task Neuberger with convincing the victims to join the Bais Din because the victims were Orthodox Jewish. Were the victims adherents of any other religious doctrine, they would have no reason to submit to the decision of Jewish arbiters. But taking advantage of an individual's religion to pressure them *by means of* that religion is not the same thing as intimidating them *because of* their religion. The allegations do not show that plaintiffs were harassed *because of* their Orthodox Jewish faith. *See Hunt v. Callahan*, 2780–11T3, 2012 WL 5381699, at *4 (N.J. Super. Ct. App. Div. Nov. 5, 2012) (affirming the trial court's decision that plaintiff "had not presented sufficient evidence to support her claim" under §2A:53A–21 because there was no evidence that the defendant intended to intimidate the plaintiff "on the basis of her race, religion, gender or ethnicity").

Accordingly, the Third Count will be dismissed.

### C. NJRICO (Fourth Count)

Under NJRICO, it is unlawful to be "employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct

9

or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J. Stat. Ann. § 2C:41–2(c). An NJRICO claim requires: "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by, or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." *Slimm v. Bank of Am. Corp.*, 12–5846, 2013 WL 1867035, at *19 (D.N.J. May 2, 2013)). "A claim brought pursuant to [NJRICO] is subject to the heightened pleading requirements of [Rule] 9(b)." *Galicki v. New Jersey*, 14–169, 2015 WL 3970297, at *7 (D.N.J. June 29, 2015).

Plaintiffs fail to establish the first element. An "enterprise" is an organization consisting of "interactions that become necessary when a group, to accomplish its goal, divides among its members the tasks that are necessary to achieve a common purpose." *D'Ambly v. Exoo*, 20–12880, 2021 WL 5083816, at *4 (D.N.J. Nov. 1, 2021) (quoting *State v. Ball*, 661 A.2d 251, 261 (N.J. 1995)). A plaintiff seeking to establish an "enterprise" must focus on the following evidence:

> [T]he number of people involved and their knowledge of the objectives of their association, how the participants associated with each other, whether the participants each performed discrete roles in carrying out the scheme, the level of planning involved, how decisions were made, the coordination involved in implementing decisions, and how frequently the group engaged in incidents or committed acts of racketeering activity, and the length of time between them.

*Ball*, 661 A.2d at 261.

Plaintiffs allege that "Neuberger, Willner, and the Firm, formed an enterprise in order to force [p]laintiffs to participate in the Bais Din … [to

further] their goal" of protecting Moshe. (Compl. ¶109.) However, the allegations in the Complaint fail to plausibly show that defendants formed an "enterprise." Plaintiffs do not describe the structure of the enterprise, each individual member's role, who led the enterprise, or the planning that occurred between each member to further the enterprise's goal. Throughout the Complaint, plaintiffs present "defendants" as a monolith, which is irreconcilable with an "enterprise" where members' tasks are divided to further the enterprises' goal. *D'Ambly*, 2021 WL 5083816, at *4 (dismissing NJRICO claim because there were no allegations regarding members' roles other than the alleged director, such as "what planning occurred, or even if there were any interactions between the members to further the [e]nterprise's goal").

Accordingly, the Fourth Count will be dismissed.

### D. <u>Unauthorized Practice of Law (Fifth Count)</u>

Section 2C:21–22a "establishes a private cause of action for persons injured by a wrongdoer's unauthorized practice of law." *Banker v. Davidson, Dawson & Clark LLP*, A–3201–20, 2023 WL 2620057, at *2 (N.J. Super. Ct. App. Div. Mar. 24, 2023). To assert a civil claim under this statute, plaintiffs must show that (1) defendant engaged in the unauthorized practice of law; (2) plaintiff suffered an ascertainable loss; and (3) a causal relationship between defendant's unauthorized practice of law and plaintiff's loss. *Johnson v. McClellan*, 260 A.3d 861, 877 (N.J. Super. Ct. App. Div. 2021).

Plaintiffs have shown all three elements. First, plaintiffs allege defendants engaged in the unauthorized practice of law. "What constitutes the practice of law is often required to be decided on a case by case basis because of the broad scope of the fields of law." *State v. Rogers*, 705 A.2d 397, 400 (N.J. Super. Ct. App. Div. 1998). Here, plaintiffs allege that defendants gave unsolicited legal advice to plaintiffs and other parties and encouraged Moshe

11

not to settle the Fraud Case. (Compl. ¶¶ 63, 120, 121, 123.) This advice included advice as to the "respective priority of recovery for … Blueberry and other of … Moshe's victims." (*Id.* ¶ 119.) Neuberger attended at least one meeting about this matter in New Jersey. (*Id.* ¶ 118.) During this time, neither Neuberger or Willner was licensed to practice law in New Jersey. (*Id.*)

Second, plaintiffs have shown that they suffered an ascertainable loss. "An ascertainable loss … is one that is quantifiable or measurable, not hypothetical or illusory." *Johnson*, 260 A.3d at 876 (internal quotation marks omitted) (citing *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013)) (applying to Section 2C:21–22a the definition of "ascertainable loss" from the New Jersey Consumer Fraud Act (CFA)). In the CFA context, "the plaintiff need not … plead ascertainable loss with pinpoint specificity." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012); *see also Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006) ("Defendant's motion to dismiss, unlike the summary judgment procedure, did not require, in order to avoid dismissal, that plaintiff provide evidential material to rebut defendant's contention that she had not sustained an ascertainable loss.").

Here, plaintiffs allege that "due to [] Neuberger's interference through … giving advice on the settlement … the Fraud [C]ase was not consummated, resulting in [] Blueberry experiencing a loss." (Compl. ¶ 125; Opp'n Br. p. 29 n. 11 (arguing the diminution of value in Blueberry's claim is the difference between what Moshe would have settled for and what he ultimately settled for).) Plaintiffs further allege that as a result of defendants' actions "[p]laintiffs have been unable to resolve their matter with [] Moshe and have now allegedly incurred a significant bill for legal services allegedly rendered by [d]efendants." (*Id.* ¶ 127.) Plaintiffs also allege that Neuberger's interference in the prospective settlement raised the costs of the litigation in the Fraud Case.

(*Id.* ¶ 3.)   Although not pleaded with "pinpoint specificity," the alleged losses are "quantifiable and identifiable," which is all that is required at this stage. *See Johnson*, 260 A.3d at 876; *Mickens*, 900 F. Supp. 2d at 446.

Last, plaintiffs have shown that "defendants['] unauthorized practice of law proximately caused plaintiff to suffer an ascertainable loss." *Johnson*, 260 A.3d at 876.   Proof of causation cannot be speculative or attenuated, but must show direct correlation. *Id.* Here, plaintiffs claim that Neuberger and Willner's interference directly correlated to plaintiffs' increased costs in litigating the Fraud Case and that defendants billed plaintiffs for legal services. (Compl. ¶ 127.)   Accepting the allegations in the Complaint as true, I find plaintiffs have sufficiently alleged causation.

Accordingly, the Motion will be DENIED as to the Fifth Count.

### E.     Emotional Distress (Sixth Count)

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove that: "(1) defendants acted intentionally or recklessly, both in doing the act and producing the emotional distress; (2) defendants' conduct was outrageous and extreme, so as to go beyond bounds of all decency and be utterly intolerable in a civilized community; (3) defendants' actions were the proximate cause of the plaintiff's emotional distress; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 532 (D.N.J. 2008)).   Plaintiffs allege that defendants' ongoing "coercion and intimidation" were "outrageous in character" and resulted in Miller suffering severe emotional distress. (Compl. ¶¶ 130–133.)

I find that dismissal of the Sixth Count is appropriate here because the alleged conduct is not sufficiently "outrageous and extreme," and the Complaint fails to allege what emotional distress Miller suffered.   Courts have found that damages were not "severe" when, for example, plaintiff suffered from

"aggravation, embarrassment, an unspecified number of headaches, and loss of sleep." *Buckley v. Trenton Sav. Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988); *see also Gattas v. City of Jersey City*, 07–4242, 2010 WL 892187, at *8 (D.N.J. Mar. 5, 2010) (finding plaintiff's bare assertions that he was "distressed, anguished, humiliated, and troubled" not severe); *Shui v. Wang*, 23–2620, 2023 WL 8520778, at *1, *2, *6 (D.N.J. Dec. 8, 2023) (dismissing the intentional infliction of emotional distress claim because the defendants' alleged tactics to "force [the plaintiff,] a sick woman [who founded the business in question] to give in to a lowball buyout offer" by the defendants who owned shares of the business did not "rise to the requisite level of extreme and outrageous conduct"); *but see Liu v. Robert Wood Johnson Univ. Hosp. Inc.*, 24–8713, 2025 WL 1793787, at *8 (D.N.J. June 30, 2025) (finding that the plaintiff's allegations that he was physically attacked and slammed to the ground multiple times resulting in injuries and mental traumas sufficiently pleaded outrageous conduct).

Here, other than summarily alleging that "[d]efendants' actions were so outrageous in character, and so extreme in degree," and that Miller suffered "undue duress" and "significant distress" (Compl. ¶¶131–33), the Complaint fails to plausibly allege what emotional distress that Miller suffered.

Accordingly, the Sixth Count will be dismissed.

### F. <u>Civil Conspiracy (Second Count)</u>

"There are four elements to the tort of civil conspiracy: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). "[A] formulaic recitation of the elements of a cause of action" is not sufficient to survive a Rule 12(b)(6) attack. *Twombly*, 550 U.S. at 555; *see Salaam v. Small*, 21–12191, 2022 WL 16552788, at *3 (D.N.J. Oct. 31, 2022)

(dismissing civil conspiracy claim when plaintiff "alleged the required elements of civil conspiracy … in conclusory fashion with absolutely no factual support").

Plaintiffs allege that defendants, Moshe, and Moshe's lawyer conspired to thwart plaintiffs' settlement with Moshe. (Compl. ¶99, 100.) But their allegations are conclusory. Nowhere do plaintiffs allege an agreement or special damages, and they fail to specify any unlawful purpose. (*Id.* ¶100) (alleging defendants' acts "were done with a common purpose to do an unlawful act, or to do a lawful act by unlawful means for an unlawful purpose).) Mere "formulaic recitation of the elements of a cause of action" is not enough. *See Twombly*, 550 U.S. at 555.

Accordingly, the Second Count will be dismissed.

### IV.  CONCLUSION

Defendants' Motion is GRANTED as to the First, Second, Third, Fourth, and Sixth counts, which are hereby DISMISSED without prejudice as to all defendants. The Motion is DENIED as to the Fifth Count. An order accompanies this opinion.

 */s/ Edward S. Kiel*
 **EDWARD S. KIEL**
 **UNITED STATES DISTRICT JUDGE**

Date: December 22, 2025